UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| KAREN ARWOOD and RAYMOND ARWOOD, | ) | |
|---|---|---|
| | ) | Case No. 2:23-cv-44 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Cynthia R. Wyrick |
| HAMBLEN COUNTY JAIL, ESCO JARNAGIN, TERESA LAWS, and CHRISTIAN TAYLOR | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants Hamblen County Jail, Esco Jarnagin, Teresa Laws, and Christian Taylor's motion to dismiss (Doc. 8). For the following reasons, the Court will **GRANT** Defendants' motion (*id.*).

### I. BACKGROUND[1]

Plaintiff Raymond Arwood ("Raymond") is an inmate in the Bledsoe County Correctional Complex, and Plaintiff Karen Atwood ("Karen") is his wife. (Doc. 1, at 2.) Defendant Hamblen County Jail ("HCJ") holds pretrial detainees and inmates awaiting transfer to another facility. (*Id.*) Defendant Esco Jarnagin is the Hamblen County Sheriff, Defendant

---

[1] As Defendants correctly point out, "the applicable limitations period [for claims under 42 U.S.C. § 1983] is the same period that state law provides for personal injury torts, which is one year in Tennessee." *Pendergrass v. Sullivan*, No. 1:19-cv-115, 2019 WL 4264377, at *2 (E.D. Tenn. Aug. 14, 2019) (internal quotations and citations omitted). Therefore, Plaintiffs' injuries occurring prior to May 9, 2022—a year before they filed their complaint—cannot provide a basis for a § 1983 claim. Nonetheless, the Court outlines allegations prior to this date for context.

Teresa Laws is the HCJ Administrator, and Defendant Christian Taylor is a corporal at HCJ. (*Id.* at 2–3.)

Raymond launched a campaign for a Hamblen County Commissioner seat in July 2019. (*Id.* at 3.) Two weeks later, police raided Raymond's home and arrested him.[2] (*Id.*) In a group text, Tim Horner, a then-Hamblen-County-Commissioner, messaged the other commissioners, "soon prisoners would have access to Raymond Arwood and then he would no longer be a problem for the commission." (*Id.* at 4.) Plaintiffs allege that, during Raymond's trial, Horner and two other commissioners—Tim Goins and Jim Stepp—sat in the back of the courtroom. (*Id.*) Karen, who was waiting in the hallway before testifying in Raymond's trial, alleges that she overheard a court security officer state that "they would deal with [Raymond] once they got him downstairs in the jail." (*Id.*) In December 2021, Raymond sent Jarnagin a letter detailing these threats. (*Id.*)

HCJ first took Raymond into custody on January 14, 2022, and held him in solitary confinement until transferring him to state custody on January 24, 2022. (*Id.*) On August 17, 2022, Raymond returned to HCJ custody for a scheduled court appearance. (*Id.*) On that day, HCJ shackled Raymond's ankles and wrists for the entirety of the three-and-a-half-hour drive to HCJ. (*Id.* at 5.) When "the booking process" (as described by Plaintiffs) started, a clerk told Raymond that he "will be kept separated from other prisoners due to the threats to [his] life that had been documented and that [the booking clerk] would have to find a location to house" him. (*Id.*) Raymond remained in the booking area for six hours until Taylor moved Raymond to a hallway that measured fifteen feet long by three feet wide. (*Id.*) Raymond shared the hallway

---

[2] It is unclear what Raymond was charged with and tried for.

with another inmate. (*Id.*) Taylor gave Raymond "a mat with the stuffing removed leaving only the vinyl shell and a half a blanket." (*Id.*)

The hallway lacked access to water or a restroom. (*Id.*) Raymond asked Taylor if he could use the restroom, and Taylor replied, "get back in your hole." (*Id.*) When someone Plaintiffs identify as Officer Blevins walked by an hour later, Raymond again asked him to use the restroom, and Blevins replied, "I'm busy, you will have to wait." (*Id.*) Raymond was only permitted to use the restroom an hour-and-a-half after asking Blevins. (*Id.*) Raymond alleges that, due to his age, "being denied access to [the] toilet for extended periods of time causes severe pain and agony to his kidneys and bladder." (*Id.*)

Raymond remained in the hallway until the next morning when he attended his court proceeding. (*Id.*) After his court appearance, Raymond returned to HCJ and remained in the booking area until 4:00 p.m. (*Id.*) At this point, Taylor removed the shackles that Raymond had worn for over thirty-three hours. (*Id.*)

Raymond remained at HCJ for an additional four nights. (*Id.* at 6.) Raymond asked Taylor if he would be separated from the general population as the booking clerk had stated, and Taylor replied, "you will not be getting no special treatment, like you received last time you were here." (*Id.*) He asked Taylor to confirm this answer with Laws because "it was documented to keep [Raymond] separated from the general population" due to the prior threats. (*Id.*) Taylor responded that Laws had instructed him to put Raymond in a cell. (*Id.*) Raymond then asked Taylor to confirm this instruction with Jarnigan, and Taylor replied, "I'm not going to check with anybody and if [you] d[o]n't hurry up and finish changing [I will] throw [you] in a cell in [your] underwear." (*Id.*)

3

Once in his cell, Raymond asked Taylor for his legal materials to write notes about his court proceeding; Taylor responded, "you are not allowed to have your legal material." (*Id.*) Raymond also asked Taylor for his hygiene items, Bible, and clothing, and Taylor replied, "you're not getting anything, you'd better sit down and shut the fuck up, you're not going to be here long enough to need anything." (*Id.*)

During Raymond's five days at HCJ, he was only given "a [half] blanket, a mat with the filling removed, a roll of tissue paper and a tube of toothpaste, no soap, no towel, and no toothbrush." (*Id.*) HCJ housed Raymond in an area designated as "isolation cells" that are designed for a single inmate; however, four inmates slept in each cell, forcing three of the four inmates in each cell to sleep on the floor on mats. (*Id.*) The isolation-cells area also contained a common area, where seven inmates, including Raymond, slept. (*Id.*) This area contained an unlocked cell with one toilet for eleven inmates—the seven sleeping in the common area and the four in that cell. (*Id.*) Because three inmates slept on the floor in the cell, they blocked access to the toilet. (*Id.*) On multiple occasions, Raymond asked officers to speak with Laws or a shift supervisor. (*Id.*)

On August 21, 2023, Raymond met with Lieutenant Coffee and told Coffee that he was not being allowed to have his hygiene items, Bible, legal materials, and clean underwear. (*Id.* at 7.) Coffee instructed officers to return Raymond's belongings. (*Id.*) The officers did so, and Raymond left HCJ the next morning. (*Id.*) Before leaving, Raymond requested to use the restroom, but the officer told him he could not. (*Id.*) HCJ transported Raymond to the Morgan County Sheriff's Department rather than the correct destination, the Morgan County Correctional Complex. (*Id.*) According to Raymond, this mistake "increase[ed his] heart rate from the

continuous fear for his life." (*Id.*) Due to this error, Raymond was unable to use the restroom for four-and-a-half hours, which again caused pain in his kidneys and bladder. (*Id.*)

While Raymond was at HCJ, both he and Karen attempted to notify Hamblen County officials of the prior threats against him, as well as previous harassment they both experienced. (*Id.*) Hamblen County did not investigate these complaints. (*Id.*) Due to the incidents at Raymond's trial, Karen worried for his safety while he was in HCJ. (*Id.* at 8.) While Raymond was at HCJ in August 2022, Karen called HCJ and asked to speak with Laws or Jarnagin, who refused to answer her questions. (*Id.*) Because of this, Karen alleges that she suffered "mental, physical stress and psychological anxiety for her husband's safety and well-being" because she did not know if Raymond was safe. (*Id.*) She received medical care as a result. (*Id.*)

Plaintiffs initiated this action on May 9, 2023 (Doc. 1). In the complaint, each Plaintiff[3] asserts claims against all Defendants for: (1) violation of the Eighth Amendment of the United States Constitution brought pursuant to 42 U.S.C. § 1983; (2) violation of the Fourteenth Amendment of the United States Constitution brought pursuant to 42 U.S.C. § 1983; (3) violation of the Americans with Disabilities Act[4] ("ADA"), 42 U.S.C. § 12101, *et seq.*; (4) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; (5) violation of

---

[3] The complaint implies that only Raymond brings these claims. (Doc. 1, at 1 ("Plaintiffs brings [sic] this **COMPLAINT** . . . for violation of *his* [c]onstitutional violations . . . .") (emphasis added).) In their response, Plaintiffs clarify that "[b]oth Karen and Raymond Arwood brought their claims collectively" and that they "jointly filed this claim, *pro se*, with the aid of a paralegal to bring this matter." (Doc. 12, at 2.) Karen, as a non-attorney, cannot represent Raymond. Nor can a paralegal. Such representation would constitute unauthorized practice of law. Nonetheless, the Court will analyze each Plaintiff's claims independently.

[4] Plaintiffs allege a claim under "42 U.S.C. § 12191 *et seq.*" (Doc. 1, at 1.) However, because this section does not exist and the citation is similar to the citation for the ADA, the Court construes this as a claim under the ADA.

the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 701[5], *et seq.*; and (6) violation of 42 U.S.C. § 1981.[6] (*Id.* at 1.)

## II.  STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[5] Plaintiffs allege claims under various sections of the Rehab Act. (Doc. 1, at 1.) However, some of the cited sections do not exist. As discussed below, Plaintiffs voluntarily dismiss their Rehab Act claims, so the Court does not need to analyze claims brought under the apparently nonexistent section of that Act.

[6] Plaintiffs allege a claim under "42 U.S.C. § 1981 2(b)(3)." (Doc. 1, at 1.) This subsection does not exist. The Court construes this as a request for damages as discussed in 42 U.S.C. § 1981a.

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Section 1983 Claims Against Individual Defendants

Each Plaintiff brings claims for violations of the Eighth and Fourteenth Amendments. (Doc. 1, at 1.) Constitutional claims against state employees and institutions, such as these, are brought under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

Defendants argue that the individual Defendants—Jarnagin, Laws, and Taylor—are entitled to qualified immunity. (Doc. 9, at 13.) The doctrine of qualified immunity shields individual government officials from damages under § 1983 "as long as their actions did not

7
Case 2:23-cv-00044-TRM-CRW   Document 14   Filed 09/21/23   Page 7 of 19   PageID #: 152

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In the motion-to-dismiss stage, courts apply a two-part test. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). First, taking the plaintiff's factual allegations as true, a court must determine whether the officer's conduct violated a constitutional right. *Id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). Second, the court determines whether the right was "clearly established" at the time of the violation. *Id.* (citations omitted).

The individual Defendants argue that they are entitled to qualified immunity because no Defendant violated either Plaintiff's constitutional rights. (Doc. 9, at 14.) The Court will therefore begin with this inquiry with respect to each Plaintiff. As Plaintiffs' constitutional rights were not violated, the Court need not address the second step.

### *i.  Whether Karen was Deprived of a Constitutional Right*

Karen alleges that the individual Defendants violated both her Eighth and Fourteenth Amendment rights. (Doc. 1, at 1; Doc. 12, at 2.) Karen appears to base her claims solely on Defendants' failure to inform her of Raymond's safety, which caused her great stress. (Doc. 1, at 7–9; Doc. 12, at 2 (stating that Karen "identified the [constitutional] violations" in paragraphs 25–37 of her complaint).)

#### a.  Eighth Amendment

Karen alleges that the individual Defendants violated her Eighth Amendment rights. (Doc, 1, at 1.) Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. The third clause of the Eighth Amendment—the Cruel and Unusual Punishments Clause—limits

the criminal process in three ways: "First, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (internal citations omitted).

Here, Karen's allegations cannot establish that any Defendant violated her Eighth Amendment rights. Karen does not allege that Defendants set an excessive bail, nor that Defendants imposed an excessive fine. She also does not allege she was accused or convicted of a crime. It therefore follows that Karen could not have been excessively punished for a crime of which she was not accused or convicted. Accordingly, the individual Defendants did not violate Karen's Eighth Amendment rights and are entitled to qualified immunity on this claim.

### b. Fourteenth Amendment

Karen also alleges that the individual Defendants violated her Fourteenth Amendment rights. (Doc. 1, at 1.) The Fourteenth Amendment contains two potentially applicable clauses. First, the Due Process Clause provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. Second, the Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *Id.*

In this case, Karen's allegations fail to state a claim under the Fourteenth Amendment. Regarding the Due Process Clause, she does not allege that Defendants took her life or property, leaving only a potential liberty deprivation. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state law or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). The Court is unaware of case law recognizing a relative's liberty

9

Case 2:23-cv-00044-TRM-CRW   Document 14   Filed 09/21/23   Page 9 of 19   PageID #: 154

interest in being informed on an inmate's safety on request.  In fact, courts have held that prisons can limit inmates' contact with their families without impinging on an inmate's liberty interest. *See Dusenbery v. Graves*, No. 94-3054, 1994 WL 548839, at *1 (6th Cir. Oct. 6, 1994) (holding that inmates "have no liberty interest in visitation from any particular immediate family member"); *Macedon v. Cal. Dep't of Corr.*, 67 F. App'x 407, 408 (9th Cir. 2003) ("A refusal to permit an inmate family visits does not impose an atypical and significant hardship; rather, an inmate's inability to visit with whom he wishes is an ordinary incident of prison life.") (internal quotations and citations omitted).  Given this, it necessarily follows that a prisoner's family member does not have a liberty interest in contacting that prisoner or learning of his whereabouts, at least within a limited timeframe, such as five days.  Accordingly, because she was not deprived of life, liberty, or property, Karen cannot state a claim under the Due Process Clause.

Karen also cannot state a claim under the Equal Protection Clause.  "The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 493 (1985)).  Government action that does not involve a suspect class—such as race or gender—need only be rationally related to a legitimate government goal to survive an equal-protection challenge.  *Id.* (citation omitted).  Here, Karen does not allege that the Defendants' actions are a classification on race, gender, or any other suspect class.  Because Defendants have an interest in prison security, this action survives an Equal Protection Clause challenge.  *Hanrahan v. Mohr*, 905 F.3d 947, 956–57 (6th Cir. 2018) (describing prison security as a valid interest to survive rational-basis review).

Accordingly, because Karen was not deprived of any constitutional rights, the individual Defendants are entitled to qualified immunity. The Court grants the individual Defendants' motion to dismiss Karen's § 1983 claims.

### ii. Whether Raymond was Deprived of a Constitutional Right

Raymond alleges that the individual Defendants violated his Eighth and Fourteenth Amendment rights. (Doc. 1, at 1.) Raymond alleges various events occurred during his time at HCJ. (*See* Doc. 1, at 4–7.) Broadly, these allegations fit into three categories: (1) Defendants' failure to respond to Raymond's medical needs; (2) Defendants' failure to respond to Raymond's concerns about his safety; and (3) the conditions of his confinement. (*See id.*)

#### a. Eighth Amendment

Raymond alleges that the individual Defendants violated his Eighth Amendment rights. (Doc. 1, at 1.) The Eighth Amendment protects against "cruel and unusual punishments." U.S. Const. amend. VIII. "When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citations omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). While inmates are not guaranteed "comfortable prisons," they are protected against "inhumane ones," and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* (quoting *Farmer*, 511 U.S. at 828).

The deliberate-indifference inquiry consists of two parts. *Id.* at 839–40 (citations omitted). First, the objective prong requires an inmate to show "that he is incarcerated under

11
Case 2:23-cv-00044-TRM-CRW   Document 14   Filed 09/21/23   Page 11 of 19   PageID #: 156

conditions posing a substantial risk of serious harm." *Id.* at 840 (quoting *Farmer*, 511 U.S. at 834). Second, the subjective prong requires that "an official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id.* (alterations omitted) (quoting *Farmer*, 511 U.S. at 837).

Further, the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, to make out a conditions-of-confinement claims, an inmate must plead "extreme deprivations." *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992). "[O]nly deprivations denying 'the minimal civilized measure of life's necessities'" will violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

1. *Medical Needs*

In this case, Raymond's allegations regarding his medical issues—the pain he experienced in his kidneys and bladder from not being permitted to use the restroom—fail to satisfy the subjective prong of the deliberate-indifference inquiry.[7] Raymond alleges that he was not permitted to use the bathroom when he requested on three occasions: (1) while in the hallway after booking for two-and-a-half hours; (2) when three inmates sleeping on the floor

---

[7] Raymond's inability to use the restroom also fails the objective prong, because he does not allege injury beyond pain. *See Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) ("While forcing a person in the custody or under the control of state authority to publicly soil themselves may create a constitutional violation, those protections do not extend to mere feelings of discomfort associated with 'having a full bladder.' So, too, those feelings are not commensurate with 'cruel and unusual punishments' the Eighth Amendment prohibits.") (internal citations omitted).

blocked his access to the toilet; and (3) while he was returned to state custody in the back of a patrol car for four-and-a-half hours. (Doc. 1, at 5–7.)

In *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), the Sixth Circuit examined a similar issue. In that case, the prison left the plaintiff handcuffed in his cell for twelve hours, where he missed meals, was denied access to water and a restroom, and was forced to maintain an uncomfortable position as he could not sit down or lie down without experiencing pain. *Id.* at 434. This caused the risk of wrist and arm injuries, dehydration, and pain and damage to his bladder. *Id.* The court found that, because the prison had "no legitimate penological purpose" for these restrictions, the plaintiff could show that prison officials "knew that [the plaintiff's] restraints would make it difficult for him to . . . access the restroom" and "chose to ignore the conditions as punishment for [the plaintiff's] perceived misdeeds," and, therefore the plaintiff could satisfy both prongs of the deliberate-indifference inquiry. *Id.* at 434–35.

However, the present case differs from *Barker*. The alleged incidents fail to establish an Eighth Amendment violation, because Raymond does not allege any facts that could support a finding that Defendants knew that denying him access to the restroom for several hours would cause him harm or that Defendants prevented him from using the restroom as punishment. Instead, he only alleges that Defendants knew of his age and that "the ailments of senior citizens" come with such an age. (Doc. 1, at 5, 7.) But knowing Raymond's age is not enough to establish the subjective prong; rather, Defendants must have acted "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner v. Scott Cnty.*, 14 F.4th 585, 594 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836–37). Raymond does not allege that Defendants knew depriving him bathroom access for several hours would cause him harm, and Raymond's age alone does not create an obvious, unjustifiably high

risk of harm associated with not being able to use the restroom for several hours. Therefore, these allegations do not provide a basis for an Eighth Amendment violation.

### 2. *Failure to Protect*

Likewise, Raymond's allegations that Defendants placed him in danger by housing him with the general population, even with knowledge of the threats against his life, fail to satisfy the objective prong of deliberate indifference. Raymond alleges that he was in fear for his life because he was kept in the general prison population despite threats made toward him at his trial and because, when he left HCJ, the transporting officer delivered him to the wrong location, which "increase[ed his] heart rate from the continuous fear for this life." (Doc. 1, at 5–7.)

In cases where an inmate alleges that a facility failed to protect him from other inmates, the plaintiff must suffer physical injuries to state a claim. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)) ("However legitimate the plaintiff's fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than the fear of assault, that gives rise to a compensable claim under the Eighth Amendment. A claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities.'") (cleaned up). Here, Raymond does not allege that he was attacked, only that he feared a potential attack. Nor does he allege that transporting him to the incorrect facility caused him any harm beyond fear. Therefore, these incidents cannot support an Eighth Amendment violation.

### 3. *Conditions of Confinement*

Finally, Raymond's conditions-of-confinement allegations also fail to state a claim under the Eighth Amendment. Raymond alleges various conditions of his confinement violate the Eighth Amendment, namely that: he remained shackled for over thirty-three hours; could not

access his legal materials, Bible, hygiene items, or clothing; slept with only half a blanket and a mat with no filling for five days; only possessed a roll of tissue paper and a tube of toothpaste, without soap, towel, or toothbrush; and was housed in overcrowded conditions. (Doc. 1, at 4–7.)

First, Raymond's shackling does not violate the Eighth Amendment. He fails to plead that this shackling satisfies the subjective prong of the deliberate-indifference test; he does not allege that the shackling injured him, that he had any condition that the shackling could aggravate, or that Defendants knew or should have known of an unjustifiably high risk of harm associated with shackling him. Further, as most of Raymond's time in shackles occurred while he was either being transported to, awaiting, or in court proceedings, this shackling does not satisfy the objective prong, because remaining shackled while being transported to and attending court proceedings are ordinary parts of being in custody and cannot be cruel and unusual punishment under the Eighth Amendment. *See Jackson v. Cain*, 864 F.2d 1235, 1243–44 (5th Cir. 1989) (holding the use of shackles is not cruel and unusual, because "shackles and handcuffs are restrains commonly used on inmates"); *Smith v. Jackson*, No. CV607-020, 2007 WL 2345240, at *2 (S.D. Ga. Aug. 15, 2007) ("[S]hackling and other methods of restraint are proper in certain circumstances.") (collecting cases); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Penn. 2007) ("[P]risons use shackles for a variety of penological purposes . . . .").

Raymond's claim that he was deprived of his legal materials, Bible, hygiene items, and clothing also does not satisfy the objective portion of the deliberate-indifference test. "Courts have not found the objective component satisfied where the deprivation of hygiene items was temporary." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (collecting cases); *see Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1998) (finding no constitutional violation where prison officials failed to provide an inmate with toilet paper for five days and with soap, a

15
Case 2:23-cv-00044-TRM-CRW   Document 14   Filed 09/21/23   Page 15 of 19   PageID #: 160

toothbrush, and toothpaste for ten days). Given Raymond was only housed in HCJ for five days, his deprivation of these items was temporary and does not satisfy the objective component of deliberate indifference.[8]

Nor does Raymond's allegation that he slept on a mat violate the Eighth Amendment, because "a prisoner has no right to sleep on an elevated bed." *Thomas v. Brady*, No. 4:19-cv-P13, 2019 WL 1929934, at *3 (W.D. Ky. April 30, 2019) (collecting cases). Finally Raymond's allegation that he was housed in overcrowded conditions cannot establish an Eighth Amendment violation, because "overcrowding is not, in itself, a constitutional violation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) (citations omitted). Rather, as discussed above, a plaintiff must plead that the overcrowding resulted in "deprivations denying the minimal civilized measure of life's necessities." *Thomas*, 2019 WL 1929934, at *3 (citing *Wilson*, 501 U.S. at 298). Here, Raymond does not allege that the overcrowding caused deprivation of life's necessities, other than his inability to use the restroom, which, as discussed above, is not a basis

---

[8] Raymond's claim that he was denied his Bible is likely better analyzed as a First Amendment Free Exercise Clause claim. In such cases, courts have recognized that "[a] rule or regulation that makes the practice of a prisoner's religion somewhat more difficult, but which has no tendency to coerce him into acting contrary to his religious beliefs does not constitute a substantial burden" to a plaintiff's free exercise rights. *Smith v. Caruso*, No. 06-13559, 2008 WL 126434, at *3 (E.D. Mich. Jan. 14, 2008) (citing *Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002)). Here, Raymond does not allege that he was denied the ability to practice his religion, only that he could not access his personal Bible. (Doc. 1, at 6–7.) Raymond eventually received his Bible on his fourth day at HCJ. (*Id.* at 7.) Therefore, this temporary deprivation of his personal Bible does not offend the Free Exercise Clause.

Raymond's claim that he was denied his legal materials also better fits into a First Amendment framework. "The right of access to the courts [is] guaranteed by the First Amendment . . . ." *Muse v. Lawson*, No. 6:20-cv-145, 2020 WL 4340743, at *3 (E.D. Ky. July 28, 2020) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). "[T]o establish a claim that the jail has interfered with his right of access to the courts, a prisoner must show actual injury to a nonfrivolous claim." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353–55 (1996)). Here, Raymond does not allege that his inability to access his legal materials injured him. Therefore, the deprivation of his legal materials does not violate the First Amendment.

16

for an Eighth Amendment violation. *See supra* Section III.A.i.a.1. Therefore, he fails to establish that his conditions of confinement violate the Eighth Amendment.

Accordingly, because no Eighth Amendment violations occurred, the individual Defendants are entitled to qualified immunity on Raymond's Eighth Amendment claim.

b. Fourteenth Amendment

Raymond also alleges that the individual Defendants violated his Fourteenth Amendment rights. (Doc. 1, at 1.) Because he does not allege that Defendants took his liberty without process, the Court assumes that Raymond intends to raise a substantive-due-process claim rather than a procedural-due-process claim.[9] "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

In this case, the Eighth Amendment provides an explicit source of constitutional protection for Raymond's claims. His claims solely concern the conditions of his confinement and Defendants' deliberate indifference towards his medical needs. Therefore, the Eighth Amendment's ban on cruel and unusual punishment, rather than substantive due process applies. Accordingly, the individual Defendants are entitled to qualified immunity on Raymond's Fourteenth Amendment claims.

---

[9] Raymond could also invoke the Fourteenth Amendment solely in reference to incorporation of the Eighth Amendment as applied to the States. *See Robinson v. California*, 370 U.S. 660 (1962) (holding the Eighth Amendment applies to the States). If this is the case, the Court analyzed Raymond's Eighth Amendment claim above, and no further discussion is warranted.

Because the individual Defendants did not violate Raymond's constitutional rights, they are entitled to qualified immunity. Therefore, the Court grants the individual Defendants' motion to dismiss with respect to Raymond's § 1983 claims.

B. **Section 1983 Claims Against HCJ**

Both Plaintiffs also bring claims against HCJ under § 1983. (Doc. 1, at 1.) HCJ moves to dismiss these claims, arguing that it cannot be held liable for the actions of its agents. (Doc. 9, at 14.)

Local governments "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. However, "there can be no liability under *Monell* without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2022) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).

Here, as discussed above, the Court finds that the individual Defendants did not violate either Plaintiffs' constitutional rights as is required to hold HCJ liable under *Monell*. *See Chambers*, 63 F.4th at 1101–02; *supra* Section III.A. Therefore, the Court will dismiss Plaintiffs' § 1983 claims against HCJ.

C. **ADA, Title VII, and Rehab Act**

Both Plaintiffs also bring claims under Title VII, the ADA, and the Rebab Act. (Doc. 1, at 1.) In their response to Defendants' motion to dismiss, Plaintiffs state that they "cede to

18
Case 2:23-cv-00044-TRM-CRW   Document 14   Filed 09/21/23   Page 18 of 19   PageID #: 163

voluntary dismissal" of these claims. (Doc. 12, at 6.) Therefore, the Court will grant Defendants' motion to dismiss these claims.

### D. 42 U.S.C. § 1981

Lastly, both Plaintiffs bring claims against all Defendants under 42 U.S.C. § 1981. (Doc. 1, at 1.) Under this statute:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To establish a claim for racial discrimination under § 1981, a plaintiff must plead that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumeration in [§] 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citations omitted).

Here, neither Plaintiff alleges that they belong to a racial minority; nor does either Plaintiff allege that they were denied a right in § 1981 on the basis of their race. Therefore, Plaintiffs claims under this statute fail, and the Court will dismiss these claims.

### IV. CONCLUSION

For the above-stated reasons, the Court grants Defendants' motion to dismiss (Doc. 8). Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT SHALL ENTER**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**